310 So.2d 154 (1975)
AI J. MENDOZA
v.
Josephine Danos, wife of AI J. MENDOZA.
No. 6650.
Court of Appeal of Louisiana, Fourth Circuit.
March 12, 1975.
Rehearing Denied April 15, 1975.
Writ Refused June 17, 1975.
*155 Tucker, Schonekas & Garrison, Arthur S. Mann, III, Russell J. Schonekas, New Orleans, for plaintiff-appellee.
Chauppette, Genin, Mendoza & Parent, Lawrence J. Genin, Lenon J. Parent, Jr., Marrero, for defendant-appellant.
Before REDMANN, LEMMON, GULOTTA, STOULIG and SCHOTT, JJ.
GULOTTA, Judge.
This is an appeal from a dismissal of a claim for alimony in a divorce suit filed by the husband based on continued separation without reconciliation following judicial decree of separation by default in favor of the wife on grounds of the husband's abandonment.[1]
The thrust of the wife's appeal is that the trial court erred in permitting testimony to be elicited on the question of the wife's fault in the divorce proceeding. Mrs. Mendoza relies on the recent case of Fulmer v. Fulmer, La., 301 So.2d 622 (1974), in which the Louisiana Supreme Court held that when a judicial separation is granted in favor of the wife based upon the husband's fault, the question of the wife's freedom from fault cannot be litigated in a subsequent divorce proceeding when the divorce is sought under the provisions of LSA-R.S. 9:302.[2] According to the wife, because she has been determined to have been free from fault in the separation decree and is in necessitous circumstances, she is entitled to permanent alimony under LSA-C.C. art. 160.[3]
Mr. Mendoza, on the other hand, seeks to distinguish the recent Supreme Court pronouncement in Fulmer v. Fulmer, supra, on the grounds that in the Fulmer case the question of the wife's freedom from fault was litigated in the abandonment proceedings, *156 and in the instant case, the decree of separation was by default. According to the husband, when a judicial separation has been obtained by default and has not been litigated, the question of the wife's freedom from fault has not been settled by the judicial decree.
The plaintiff husband further contends that the judicial separation in the instant case was obtained by the wife on February 1, 1973, and the Supreme Court decision in Fulmer v. Fulmer was rendered on October 11, 1974. According to Mendoza, because the Supreme Court decision was rendered subsequent to the decree of separation, the Fulmer decision is not applicable to the instant case. His position is that the Fulmer decision constituted a departure from the prior jurisprudence and the application of Fulmer to the instant case would result in the Supreme Court decision being retroactively applied. Mendoza contends that under such circumstances such retroactive effect is prohibited under Louisiana Constitution, Art. I, Sec. 2, which provides that no person shall be deprived of life, liberty, or property except through due process of law. Mendoza further argues that he has a right to rely on prior decisions which reach a result contrary to the holding in the Fulmer case.
We reject the arguments advanced by plaintiff husband. In Fulmer, the Supreme Court clearly concluded that the question of the wife's freedom from fault was judicially determined in the judicial separation when a judgment of separation was rendered in the wife's favor whether the judgment was obtained by default or was contested. In Fulmer, supra, at 628, 629 the court stated:
"Where the wife obtains a judicial separation on the ground of her husband's fault, such judicial determination of the husband's pre-separation fault as the sole legal cause of the separation cannot be re-examined in a subsequent suit for divorce grounded on the statutory ground, La. R.S. 9:302, of the spouses' non-reconciliation for a specified period after a judgment of separation. In this respect, the judicial determination is conclusive whether, as here, determined after a contested hearing or, as in August v. Blache, upon confirmation of a judgment by default. See also, Comment, Relitigation of Fault in a Divorce Proceeding, 14 Loyola L.Rev. 261 (1968)". (emphasis ours)
We draw from our interpretation of Fulmer that the issue raised in the instant case has been put at rest. See also Frederick v. Frederick, La., 302 So.2d 903 (1974).
We reject also Mendoza's contention that if we follow the holding in the Fulmer case, we are retroactively applying this decision contrary to the Louisiana Constitution Art. I, Sec. 2. The Fulmer court relied on the conclusions reached by the Supreme Court in a 1942 decision. The Fulmer court stated:
"The essential issue now before the court was decided by us against the husband in August v. Blache, 200 La. 1029, 9 So.2d 402 (1942), previously cited."
The court went on to say in referring to its holding in August v. Blache, supra:
"We thus held that, where the husband held at fault in the separation suit obtains a divorce on the ground of non-reconciliation following the separation judgment, he is precluded from contesting his wife's right to post-divorce alimony, if in need, because of the judgment of separation in her favor based upon her husband's fault."
The court in effect is applying in Fulmer what they interpreted the law to be as set out in August v. Blache in 1942. Clearly, then, we cannot say that the Fulmer decision is being retroactively applied as contended by Mendoza.
It is arguable that the Blache decision does not stand for the principle that a separation decree precludes the introduction *157 of evidence regarding the wife's fault in a subsequent divorce suit because the Supreme Court in Blache said only an implication of fault was created by the preceding judgment of separation. Nevertheless, the wording of the Supreme Court in the Fulmer case, in our opinion, clearly states that the Blache decision precludes a relitigation of the question of the wife's freedom from fault in a subsequent divorce proceeding when the wife has obtained a judicial separation in her favor. We find support for this conclusion in our recent decisions of Fitzpatrick v. Fitzpatrick, 303 So.2d 539 (La.App. 4th Cir. 1974); and Dunn v. Dunn, 303 So.2d 580 (La.App. 4th Cir. 1974).
Having concluded that Mrs. Mendoza is entitled to permanent alimony if in necessitous circumstances, we now turn our attention to the question of quantum. The trial judge had awarded alimony pendente lite to Mrs. Mendoza in the sum of $500 per month. According to Mr. Mendoza's testimony at the time of the hearing for permanent alimony, his adjusted gross income was $19,000 per year based on an annual gross salary of $21,000.
Mrs. Mendoza received from the community settlement the family home which was appraised by a realtor in the sum of $33,000. The outstanding mortgage on the property was $20,500 at the time of the hearing. Mrs. Mendoza additionally received from the settlement an automobile valued at $2,200 and household furnishings. The household effects and automobile were unencumbered and on the date of hearing Mrs. Mendoza had a checking account which showed a balance of $163.49. Mrs. Mendoza earns approximately $200 per month from a part-time job.
When we consider the assets of the wife hereinabove enumerated together with her encumbrances, we cannot conclude that Mrs. Mendoza is not in necessitous circumstances. The wife is not required to deplete the entire sum received from the community in order to be entitled to permanent alimony. See Procell v. Procell, 226 So.2d 590 (La.App. 2nd Cir. 1969); Loe v. Loe, 131 So.2d 106 (La.App. 2nd Cir. 1961).
Accordingly, we conclude that Mrs. Mendoza is entitled to permanent alimony in accordance with the provisions of LSA-C.C. art. 160.
Permanent alimony under LSA-C.C. art. 160 includes only an award for maintenance which has been determined to be a sufficient amount to provide for food, clothing and shelter and is to be determined by the facts and circumstances of each case. See Latour v. Guilbeau, 256 So.2d 731 (La.App. 3rd Cir. 1972) and Rittiner v. Rittiner, 181 So.2d 267 (La.App. 4th Cir. 1966). From a consideration of Mrs. Mendoza's testimony and of other documentary evidence, we conclude Mrs. Mendoza's expenses for food, clothing, shelter and other necessary incidentals approximate $525 per month.[4] Subtracting Mrs. Mendoza's monthly income of approximately $200 per month, we determine that she is entitled to $325 per month in alimony.
Accordingly, the judgment appealed from is reversed. Judgment is now rendered ordering Al J. Mendoza to pay permanent alimony to his divorced wife, Josephine Mendoza, in the sum of $325, first payment to be made on the first of April, 1975 and on the first of each succeeding month thereafter. Costs to be paid by plaintiff-husband, Al J. Mendoza.
Reversed and rendered.
*158 REDMANN, J., dissents with written reasons.
LEMMON, J., concurs with written reasons.
REDMANN, Judge (dissenting).
This wife worked full time for 12 years before marriage, earning a salary ample for self-support. The marriage endured some six years, although for periods totalling about three years the spouses did not live together, and on one prior occasion a suit to terminate the marriage was filed. During the six-year marriage the wife continued to work full time, until a few weeks before the final separation. The wife had just returned after a de facto separation of two years; a very few weeks after her return she quit her job and a very few weeks thereafter the final separation occurred.
Louisiana law does not permit a husband to escape an alimony obligation by refusing to work; Zaccaria v. Beoubay, 1948, 213 La. 782, 35 So.2d 659; Viser v. Viser, La. App.1965, 179 So.2d 673; Rakosky v. Rakosky, La.App.1973, 275 So.2d 421 (all cases of temporary alimony). If "justice [is to be] administered without ... partiality," La.Const. art. 1 § 22, we should tell a wife that, just as a husband cannot escape an alimony obligation by quitting work, a wife cannot create an alimony obligation by quitting work.
This husband did not have to support this wife, nor to send her to school, while she was his wife. He should not have to support her now, nor to send her to school, when she is but his ex-wife.[1] He himself went to law school part time at night while working full time, and should not be forced to pay his ex-wife to enjoy the privilege of working only part time while going to school part time during the day. Her commendable desire for self-improvement can be accomplished at night school (as his was) without preventing full time employment. If he must pay for her to go to college during the day to become a school-teacher, where will we draw the line? Suppose she, or another ex-wife, decides after finishing college that medical school calls her?
The proper judgment on our facts is that the wife should be allowed alimony for one month during which she must seek full time employment, with leave to apply for an additional month or months on showing her good faith seeking of full time employment has been unproductive.
LEMMON, Judge (concurring).
I agree that Mrs. Mendoza presently "has not sufficient means for her support" and is otherwise entitled to alimony under C.C. art. 160. The difficulty is that her means (including her proved ability to produce income) are sufficient except that her return to school to complete her college education prevents her full-time employment.
I believe that under the totality of circumstances it is reasonable to allow Mrs. Mendoza alimony for the period of time reasonably necessary to complete her original educational goal. This award is somewhat of a rehabilitative allowance for a wife during the period of transition following divorce. But her return to college, in lieu of continuing full-time employment, should not entitle her to alimony forever.
In consideration of the facts that the marriage lasted for only a relatively short period of time, the couple had no children, the wife worked consistently before and during the marriage, and no reason was *159 shown why she should not seek full-time employment (except for her return to college), our award of alimony to supplement Mrs. Mendoza's curtailed income while completing her college education should not be construed as an implication that the award should continue when she is again available for full-time employment.
NOTES
[1] We fail to find in the pleadings and in the record any evidence that the decree of separation was based on abandonment. No copy of the decree of separation was entered in evidence; none of the pleadings aver the basis for the separation; nor does the testimony reveal the basis for the separation. In the wife's brief she states that the basis on which the default decree of separation was rendered was the husband's abandonment. We find no dispute either in argument or in brief of this claim.
[2] LSA-R.S. 9:302 reads as follows:

"When there has been no reconciliation between the spouses for a period of one year or more from the date the judgment of separation from bed and board was signed, the spouse who obtained this judgment may sue for and obtain a judgment of absolute divorce. If no such divorce action is instituted within a year and sixty days from the date the judgment of separation from bed and board was signed, the other spouse may sue for and obtain a judgment of absolute divorce. * * *"
[3] LSA-C.C. art. 160 reads as follows:

"When the wife has not been at fault, and she has not sufficient means for her support, the court may allow her, out of the property and earnings of the husband, alimony which shall not exceed one-third of his income when:
"1. The wife obtains a divorce;
"2. The husband obtains a divorce on the ground that he and his wife have been living separate and apart, or on the ground that there has been no reconciliation between the spouses after a judgment of separation from bed and board, for a specified period of time; or
"3. The husband obtained a valid divorce from his wife in a court of another state or country which had no jurisdiction over her person.
"This alimony shall be revoked if it becomes unnecessary, and terminates if the wife remarries."
[4] In calculating an appropriate amount for maintenance, we included the amounts submitted for payments on the house, gas, electricity, water, telephone and maintenance of an automobile and medical bills. We did not include the amounts submitted for yard maintenance, medical insurance, automobile insurance, house insurance and charitable contributions.
[1] C.C. art. 160's "support" includes more than food, clothing and shelter, Bernhardt v. Bernhardt, La.1973, 283 So.2d 226, but not reeducation for another career of a person already educated for one career. If "support" does not include money for investment in property, see Naughton v. Naughton, La.App.1974, 304 So.2d 679, it also does not include money to invest in a university education. Whatever the ex-wife spends on her education is means that could be used for her "support."